STATE OF NORTH CAROLINA v. ROBERT HOLLAND GREER

No. 8125SC923

(Filed 7 September 1982)

**Public Officers §§ 11, 11.1— removal of magistrate error—indictment insufficient to state criminal charge—statute in irreconcilable conflict**

An indictment charging a magistrate with a violation of G.S. 14-230 in that he willfully and corruptibly violated his oath of office by committing a person to jail without lawful process with the intent to extort from him the sum of $200 was insufficient to support his conviction since the provisions of G.S. 14-230 and the provisions of G.S. 7A-173 and 7A-376 are in irreconcilable conflict and since the enactment of the statutory scheme set out in the sections of G.S. 7A, by clear implication, repealed G.S. 14-230 so far as that statute applied to magistrates, who are now officers of the General Court of Justice, and the pertinent provisions of Chapter 7A of the General Statutes provide the exclusive procedures for charging a magistrate with misconduct in office or for removing him from office for misconduct. Article IV, § 17(3) of the Constitution of North Carolina.

Judge WEBB concurring in the result.

APPEAL by defendant from *Grist, Judge*. Judgment entered 2 April 1981 in Superior Court, CALDWELL County. Heard in the Court of Appeals 9 February 1982.

The defendant, a magistrate in Caldwell County, was tried on a bill of indictment which charged him with a violation of G.S.

14-230 in that he willfully and corruptly violated his oath of office by committing a person to jail without lawful process with the intent to extort from him the sum of $200.00 and that the defendant did extort from that person $200.00 of which the defendant paid $125.00 to another person as reimbursement for damage to that person's automobile.

The evidence showed that Mr. Ottie Jackson Carroll, Jr. and his daughter, Rebecca Carroll Cox, were driving through Caldwell County at approximately 1:30 p.m. on 12 July 1980 when a bottle was thrown through the windshield of Mr. Carroll's automobile. The police came to the scene and arrested Larry Hafner for throwing the bottle. The officers carried Mr. Hafner to the office of the defendant who was the magistrate on duty at that time. Mr. Carroll and Mrs. Cox also went to the defendant's office. Mr. Hafner was intoxicated and unruly and the defendant ordered him removed from his office. Mr. Carroll testified that defendant said to an officer: "Take him up in jail and book him for 30 days contempt of court." Mrs. Cox testified she heard the defendant say "Now, I have told you to be quiet, and I am going to have to cite you for contempt of court if you don't be quiet," and then told the officer "Get him out of here." Mr. Hafner testified that he was "drunk as a cooter" but he remembered the defendant saying "lock him up for contempt." Sharon Kirby testified that she was an officer on duty, that she helped carry Larry Hafner to jail and put on the jail card "contempt" and "no bond." She testified she returned to the defendant's office and told him she had put Mr. Hafner in jail for contempt.

Mr. Carroll testified that in answer to a question by the defendant he told the defendant it would cost $125.00 to fix the windshield. He testified further that he asked the defendant to issue a warrant for Mr. Hafner. The defendant told Mr. Carroll to let him handle the matter in his way and did not issue a warrant. After the defendant had left his office for the day and at approximately 12:00 midnight, Mr. Hafner's stepfather came to the jail to procure Mr. Hafner's release. John H. Parlier, the magistrate on duty at the time, testified he went to the jail and the jail log had Larry Hafner's name on it with the notation "$200 bond for contempt" beside it. A pencil mark had been drawn through the word "contempt." Mr. Parlier testified further that he called the defendant and the defendant told him he was holding Mr. Hafner

because he had broken a windshield on someone's automobile. Mr. Parlier received $200.00 from Mr. Hafner's stepfather and gave him a receipt for it marked "contempt." Mr. Hafner was released from jail. The next day, Mr. Parlier gave the money to the defendant.

On 13 July 1980 the defendant called Mrs. Cox and told her he had collected $200.00 for the damage to the automobile windshield. He told her that if she would come to his office, he would give her $190.00 and would keep $10.00 for jail fees. She told him she could not come and asked him to send her a check. Mrs. Cox testified the defendant told her "No, I don't want any records of it because I handled it in an underhanded way." They agreed that Mr. Carroll would come to the defendant's office and get the money.

Mr. Carroll testified that he went to the defendant's office a few days later and the defendant gave him $125.00. Mr. Carroll asked about the balance of the $200.00 and the defendant told him he needed it for court costs but if any were left after he got it settled, he would send it to him. Mr. Carroll testified further that he offered to give the defendant a receipt for the money, but the defendant said he did not want a receipt, that some of his friends had "told him to watch his step, that it was hot money and he had to handle it in a careful way." The defendant paid $10.00 in jail fees and put the remaining $65.00 in an envelope which he kept until the time of trial.

The defendant was convicted and appeals from a sentence removing him from office.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Christopher P. Brewer, for the State.*

*Chambers, Ferguson, Watt, Wallas, Adkins and Fuller, by James E. Ferguson, II, for defendant-appellant.*

WELLS, Judge.

Defendant's only assignment of error is the denial of his motion to dismiss. At trial, defendant did not move to quash the indictment nor did defendant otherwise challenge the sufficiency of the indictment. Defendant did not argue the sufficiency of the indictment on appeal. Despite these circumstances, the bill of indict-

ment, upon which the prosecution is based, is before us as a part of the record proper, and we are charged with notice of its contents. *State v. Able*, 11 N.C. App. 141, 180 S.E. 2d 333 (1971). If the bill of indictment is insufficient on its face to state a criminal charge and support a conviction, this Court, *ex mero motu*, should so declare and arrest the judgment. *State v. Able*, supra. *See also State v. Wallace*, 25 N.C. App. 360, 213 S.E. 2d 420 (1975), *cert. denied*, 287 N.C. 468, 215 S.E. 2d 628 (1975). *See also* 4 N.C. Index 3d, Criminal Law, Sec. 127 and 146.2.

Article IV, Sec. 17 of the Constitution of North Carolina makes provision for the removal of judicial officers. Subsection (3) of Section 17 provides as follows:

> (3) "*Removal of Magistrates.* The General Assembly shall provide by general law for the removal of Magistrates for misconduct or mental or physical incapacity."

Pursuant to the predecessor of that Section, Article IV, Sec. 17(2), the General Assembly enacted G.S. 7A-173. *See* 1965 Session Laws, Ch. 310, Sec. 1, providing for the suspension, removal, or reinstatement of magistrates. Under that statute, a magistrate may be removed from office by the senior regular resident superior court judge or any regular superior court judge holding court in the district. The statute provides that grounds for removal are the same as for a judge of the General Court of Justice. G.S. 7A-376 sets forth the grounds upon which judges of the General Court of Justice may be removed from office.

The gravamen of the offense with which defendant was charged in this case is misconduct in office. The provisions of G.S. 14-230 and the provisions of G.S. 7A-173 and 7A-376 are in irreconcilable conflict. Although repeal by implication is not generally favored as a rule of statutory construction, *Commissioner of Insurance v. Automobile Rate Office*, 294 N.C. 60, 241 S.E. 2d 324 (1978), we are persuaded that the enactment of the statutory scheme set out in the sections of G.S. 7A referred to above have, by clear implication repealed G.S. 14-230 so far as that statute applies to magistrates, who are now officers of the General Court of Justice, *see* Article IV, Sec. 10 of the North Carolina Constitution, and that the pertinent provisions of Chapter 7A of the General Statutes provide the exclusive pro-

cedures for charging a magistrate with misconduct in office or for removing him from office for misconduct.

Accordingly, the judgment of the Court below must be

Arrested and vacated.

Judge MARTIN (Robert M.) concurs.

Judge WEBB concurs in the result.

Judge WEBB concurs in the result.

I agree with the majority that the conviction of the defendant cannot stand. I do not agree with the reasons they assign for this result. The majority holds that G.S. 7A-173 and G.S. 7A-376 repealed by implication G.S. 14-230 as applied to magistrates. I cannot agree with this holding. G.S. 14-230 provides that a magistrate who is convicted of corruptly violating his oath of office shall be fined or imprisoned in the discretion of the court and shall be punished by removal from office. G.S. 7A-173 provides for the removal of magistrates under certain conditions. I do not believe any of the provisions of this section conflict with G.S. 14-230. There is no reason that there cannot be separate methods of removing magistrates.

I would reverse the judgment of the superior court on another ground. All the evidence shows that at the time Mr. Hafner was ordered to jail, Mr. Hafner was in fact guilty of contempt of court. The defendant was justified in holding him in contempt. I do not believe we should go behind the judgment of a judicial officer and find some other ground for his action when his action is supported by the record. The defendant may have used poor judgment in some of his actions, but I do not believe this should affect the outcome of this case. The State's theory is that the defendant held Mr. Hafner in contempt for the purpose of extorting $200.00 from him. The evidence justified the defendant in holding Mr. Hafner in contempt. I do not believe we should impugn the defendant's motives by saying that he held Mr. Hafner in contempt for some reason other than Mr. Hafner's contemptuous action. I vote to reverse on this ground.